# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANNE M. GARVER,

        Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 3:08-cv-209

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on April 1, 2002, which were denied at the initial level and Plaintiff took no further appeal. *See,* Tr. 84-86; 427-29.

Plaintiff filed second applications for SSD and SSI with a protective filing date of November 26, 2002, alleging disability from October 30, 2001, due to an impairment to her feet and a vision impairment. (Tr. 87-89; 437-40; 148-57). Plaintiff's applications were denied initially and on reconsideration. (Tr. 54-57, 60-62; 442-45, 447-49). A hearing and a supplemental hearing were held before Administrative Law Judge James Knapp, (Tr. 553-78, 579-99), who determined that Plaintiff is not disabled. (Tr. 27-40). The Appeals Council granted Plaintiff's request for review and subsequently determined that Plaintiff is not disabled. (Tr. 10-16). The Appeals Council's decision became the Commissioner's final decision and this action followed.

In determining that Plaintiff is not disabled, the Appeals Council adopted Judge Knapp's findings one through fourteen. *Id.* Judge Knapp found that Plaintiff has severe depressive disorder NOS, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 39, findings 3, 4). Judge Knapp also found that Plaintiff has the residual functional capacity to perform a limited range of work at all exertion levels. *Id.*, findings 6, 8. Judge Knapp then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 40, findings 12, 13). Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 40).

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing

4

to consider the combination of her impairments, failing to find that she is entirely credible, and by relying on the medical advisors' (MA) testimony. (Doc. 9). However, as the Commissioner notes in his Memorandum in Opposition, Plaintiff relies primarily on her own testimony to support her arguments and on little of the medical evidence. (Doc. 10).

Plaintiff has a history of impairments involving her feet. On March 28, 2001, Plaintiff underwent a left foot fusion of the first interphalangeal joint, removal of heel spur with release of plantar fascia, and removal of posterior spur with reattachment of the Achilles tendon. (Tr. 204-05). In February, 2002, Plaintiff underwent a left ankle arthroscopy with partial synovectomy and removal of internal fixation left hallux. (Tr. 206-07). On November 5, 2004, Plaintiff underwent a fusion of the interphalangeal joint of the left big toe with application of internal fixator. (Tr. 361-62).

On July 17, 2002, examining physician Dr. Padamadan reported that Plaintiff came to the evaluation wearing a left ankle air case which looked "brand new", that she was five feet five inches tall and weighed 242 pounds, that she limped with a bandage on the right big toe for ingrown toenail removal. (Tr. 210-17). Dr. Padamadan also reported that Plaintiff's left ankle showed excellent range of motion, she "complained of pain on superficial touch of the big toe (overreaction)", her right ankle was normal, and that her diagnoses were foot surgery, the last one in February, 2002, which is well healed, obesity, and history of mitral valve prolapse without any heart murmurs. *Id.* Dr. Padamadan opined that Plaintiff was able to sit and stand, might have difficulty with prolonged walking and climbing stairs and ladders for another two more weeks as a result of the toenail repair, and that otherwise she had no limitations. *Id.*

Although Plaintiff alleges that she experiences headaches several times a week, up

5

to 40 per month, there is little in the way of objective medical evidence to support Plaintiff's allegation. Consulting neurologist Dr. Yeh reported on February 6, 2003, that Plaintiff complained of dizziness, headache, and transient blurred vision with flash spots. (Tr. 232-33). Dr. Yeh also reported that a previous MRI of Plaintiff's brain revealed a lesion most likely a cavernous angioma, that her physical examination was essentially normal, that her alleged symptoms could not be explained by the lesion seen on the MRI, and that her diagnosis was likely partial cerebellar dysfunction on the left and possible migraine headache. *Id.*

A MRI of Plaintiff's head and a CT scan of her brain performed on February 25, 2003, revealed a cavernous hemangioma which was unchanged from November and December, 2002, examinations. (Tr. 239).

Examining psychologist Dr. Schulz reported on April 1, 2003, that Plaintiff completed high school, her affect was congruent and appropriate, her motor activity was calm, her mood was euthymic, was alert and oriented, and that her judgment was sufficient to make life decisions and conduct her own living arrangements. (Tr. 243-50). Dr. Schulz also reported that Plaintiff's verbal IQ was 70, her performance IQ was 73, and her full scale IQ was 69, placing her in the extremely low range, her memory was in the borderline range, and that her reading skill was in the low average range. *Id.* Dr. Schulz noted that Plaintiff's diagnoses were cognitive disorder NOS, depressive disorder NOS, and borderline intellectual functioning; he assigned her a GAF of 55. *Id.* Dr. Schulz opined that Plaintiff's ability to relate to others was minimally impaired, her ability to understand, remember, and follow instructions was moderately impaired, her ability to maintain attention and concentration to perform simple repetitive tasks was minimally impaired, and her ability to withstand the stress and pressures associated with day-to-day work activity was

moderately impaired. *Id.*

Treating physician Dr. Chadha reported on August 14, 2003, that Plaintiff had been having recurrent headaches for the last 20 years which had become associated with throbbing pain and photophobia and sonophobia, that she sometimes had visual auras, and that at times she had difficulty with balance and walking. (Tr. 263). Dr. Chadha also reported that Plaintiff's neurological examination has been unremarkable, an MRI scan of her brain had shown a small AV malformation in the left cerebellar hemisphere which was probably not causing any neurological deficit, and that she was being treated for migraine with medications. *Id.*

On January 9, 2004, treating physician Dr. Goldson reported that Plaintiff was able to stand/walk for two hours in an eight-hour work day and for 30 minutes without interruption, sit for two hours in an eight-hour workday and for one hour without interruption, was able to lift/carry up to 5 pounds occasionally, and that she was unemployable and would be for between 30 days and nine months. (Tr. 348-50).

Consulting physician Dr. Grossman reported on January 16, 2004, that Plaintiff complained of chronic headache since age 12, her neurological examination was normal, that the lesions which appeared on previous MRIs were not responsible for her symptoms , and that she should be treated medically. (Tr. 297-98).

Plaintiff also has a history of moderate sleep apnea. (Tr. 356-60).

An MA testified at the supplemental hearing that with respect to any alleged exertional impairments, Plaintiff did not meet or equal any of the Listings. (Tr. 586- 92). The MA also testified that Plaintiff had no exertional limitations. *Id.* A second MA testified at the supplemental hearing that with respect to any alleged mental impairment, Plaintiff did not meet or

7

equal the Listings. (Tr. 592- 98). The MA also testified that there was insufficient evidence to establish a cognitive disorder and that Plaintiff would be able to perform simple and detailed but not complex tasks. *Id.*

A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Id.* (citation omitted); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990).

First, the Court notes that with the exception of Dr. Goldson, none of the treating or consulting physicians of record have concluded that Plaintiff is disabled. With respect to Dr. Goldson, even assuming that his opinion that Plaintiff is disabled were supported by objective evidence, which it is not, he clearly opined that any alleged disability would last between 30 days and nine months. That clearly does not satisfy the durational requirement of the Act.

In the absence of any evidence in the record from any treating, consulting, or examining source that Plaintiff is disabled, the Commissioner had an adequate basis for relying on the MAs' testimony that Plaintiff is not disabled.

With respect to Plaintiff's alleged combination of impairments, the Court notes that Judge Knapp consistently referred to Plaintiff's impairments in the plural and specifically referred to her combination of impairments in determining that she is not disabled. *See, e.g.,* Tr. 39, finding 4. As noted above, the Appeals Council adopted Judge Knapp's findings. Accordingly, the Commissioner did not err by failing to consider Plaintiff's alleged impairments in combination. *See, Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990).

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 5, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).